# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| TESSA WILSON, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) |
| v. | ) No. 19-1096-KHV |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff appeals the final decision of the Commissioner of Social Security to deny disability and disability insurance benefits under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401-34. For reasons stated below, the Court reverses the decision of the Commissioner and remands for further proceedings.

### Procedural Background

On September 4, 2015, plaintiff filed her disability and disability insurance applications with the Social Security Administration. She alleged a disability onset date of March 22, 2013. Plaintiff's benefit application was denied initially and on reconsideration. On February 7, 2018, an administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the SSA and that she was not entitled to benefits. See Transcript Of Administrative Record (Doc. #11) filed July 22, 2019 ("Tr.") at 15-30. On February 22, 2019, the Appeals Council denied plaintiff's request for review. Tr. at 1-3. Plaintiff appealed the final decision of the Commissioner

---

[1] Andrew M. Saul is the current Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as defendant.

to this Court. The decision of the ALJ stands as the final decision of the Commissioner. See 42 U.S.C. § 405(g).

## Factual Background

The following is a brief summary of the factual record.

Plaintiff is 48 years old. Until March 22, 2013, when she fell at work, she worked as a wire compressor and processor at a tire plant. Since that time, plaintiff has not engaged in substantial gainful activity. Plaintiff alleges that she is disabled because of shoulder, neck and back pain, as well as lymphedema, depression and anxiety.

**I.     Medical Evidence**

Since 2009, plaintiff has received treatment for neck and shoulder pain. After plaintiff fell at work on March 22, 2013, she was diagnosed with a left shoulder strain, left shoulder contusion, a thoracic sprain and a rib contusion. In addition, plaintiff began experiencing body swelling, particularly in the lower extremities.

In July of 2014, plaintiff had surgery on her left shoulder to repair a type II superior labral anterior posterior tear. After shoulder surgery, she experienced further body swelling. In August of 2014, a physician assistant instructed her to wear compression stockings and to keep her legs elevated as much as possible. Tr. 464, 468.

From September of 2014 through at least January of 2017, Dr. Dale Denning, M.D., treated plaintiff for chronic swelling which he diagnosed as lymphedema. Plaintiff reported that she noticed increased swelling in her lower extremities after surgery and that her legs were a little less swollen in the morning. Tr. 666. Dr. Denning noted that prolonged standing and prolonged sitting made plaintiff's symptoms worse and that "rest, elevation, and not . . . walking" helped a little bit to relieve her symptoms. Tr. 667. In July of 2015, Dr. Denning noted that her edema in her lower

extremities was better than in September of 2014 but that she had a trace of pitting pretibial edema bilaterally and that her right ankle area was still quite swollen. Tr. 675-76. In January of 2016, Dr. Denning noted a trace of pitting pretibial edema in the lower extremities and that her swelling issues appeared to be somewhat cyclical. Tr. 811. In January of 2017, Dr. Denning noted that plaintiff continued to have lower extremity lymphedema and that this condition would be a chronic management problem. Tr. 1103.

In September of 2015, Dr. Nathan Bloom, M.D., plaintiff's primary care physician, submitted a medical source statement in support of her claim for disability. Dr. Bloom noted that plaintiff suffered from left shoulder pain, labral tear, lymphedema of the legs, left arm pain and weakness, and neck pain. Tr. 679. Dr. Bloom opined that in a day, plaintiff could stand up to four hours and sit up to six hours. Tr. 680. Dr. Bloom opined that she needed to be able to take unscheduled breaks every 30 to 40 minutes because of pain, paresthesia, numbness and muscle weakness. Tr. 681. Dr. Bloom further opined that plaintiff needs to elevate her legs at heart level about half of each workday because of chronic lymphedema. Id.

## II.     Vocational Expert Opinion

The ALJ asked the vocational expert about the work opportunities for a person who can perform sedentary work; who can never climb stairs, ramps, ropes, ladders or scaffolds; who can occasionally balance and stoop; who can never kneel, crouch, crawl or reach overhead; who can only occasionally push or pull with the upper or lower extremities; who can frequently but not constantly handle and finger bilaterally; who is required to work in a temperature-controlled environment and must avoid concentrated exposure to pulmonary irritants, unprotected heights, excessive vibrations and hazardous machinery. Tr. 58-59. The vocational expert testified that someone with that residual functional capacity ("RFC") and plaintiff's age, education and work

experience could not perform her past work but could perform work as an addresser, document preparer or a cutter/paster. Tr. 58-59. The vocational expert testified that if someone with that RFC was also required to elevate the lower extremities to the waist level for two to three hours each day, no work would be available. Tr. 60.

### III. ALJ Findings

The ALJ denied benefits at step five, finding that plaintiff was capable of performing work. In his order of February 7, 2018, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since March 22, 2013, the alleged onset date.
>
> 3. The claimant has the following severe impairments: lymphedema, history of left rotator cuff, superior labral, and [superior labral anterior posterior] tears; degenerative disc disease, status post ACDF; obesity; anxiety; depression; and asthma.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except can lift and/or carry occasionally ten pounds and frequently ten pounds; can stand and/or walk for two hours out of an eight-hour workday; can sit for six hours out of an eight-hour workday; can never climb ramps and stairs; and can never climb ladders, ropes or scaffolds. The claimant can occasionally balance and stoop; can never crouch, kneel, or crawl; and can occasionally push/pull with the bilateral arms and legs. The claimant can never reach overhead and can frequently but not constantly handle and finger bilaterally. The claimant must work in a temperature controlled environment, and must avoid concentrated exposure to pulmonary irritants, unprotected heights, excessive vibrations, and hazardous machinery. The claimant can only perform unskilled work and can have no more than occasional contact with the public and co-workers.
>
> 6. The claimant is unable to perform any past relevant work.
>
> 7. The claimant was born on August 20, 1971 and was 41 years old, which is

defined as a younger individual age 45-49 [sic], on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 22, 2013, through the date of this decision.

Tr. at 17-29 (citations omitted).

## **Standard Of Review**

The Court must determine whether the Commissioner's decision is free from legal error and supported by substantial evidence. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)). It requires "more than a scintilla, but less than a preponderance." Id. (quoting Lax, 489 F.3d at 1084). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court will not reweigh the evidence or retry the case, but will examine the record as a whole, including anything that may undercut or detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

## **Analysis**

Plaintiff bears the burden of proving disability under the SSA. See Ray v. Bowen, 865

F.2d 222, 224 (10th Cir. 1989). The SSA defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. See 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing her past relevant work; and (5) whether the impairment prevents the claimant from doing any kind of work. See 20 C.F.R. §§ 404.1520, 416.920. If a claimant satisfies steps one, two and three, she will automatically be found disabled; if a claimant satisfies steps one and two, but not three, she must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. See Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988).

The ALJ denied benefits at step five, finding that plaintiff is capable of performing sedentary work with certain restrictions. Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.

The ALJ must assess RFC based on all relevant evidence in the record, including information about individual symptoms and any "medical source statements," i.e. opinions by medical sources regarding what plaintiff can do despite her impairments. Social Security Ruling ("SSR") 96-8p, 1996 WL 874184, at *7 (July 2, 1996). As part of the narrative discussion of the RFC assessment, the ALJ must explain how he or she considered and resolved any material inconsistencies or ambiguities in the evidence. Id. The RFC assessment must always consider and address medical source opinions. Id. If the RFC assessment conflicts with an opinion from a

medical source, the ALJ must explain why the opinion was not adopted. Id.

A treating physician's opinion carries controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, Titles II And XVI: Giving Controlling Weight To Treating Source Medical Opinions, 1996 WL 374188, at *2 (S.S.A. July 2, 1996). Even if the ALJ does not give controlling weight to a treating physician's opinion, he or she must still give the opinion deference and weigh it using all of the factors set forth in the regulations. Watkins, 350 F.3d at 1300; see Mays v. Colvin, 739 F.3d 569, 574 (10th Cir. 2014); SSR 96-2p, 1996 WL 374188, at *4. In particular, the ALJ must consider the following factors: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which relevant evidence supports the physician's opinion; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins, 350 F.3d at 1301; 20 C.F.R. §§ 404.1527(c)(2-6); see Newbold v. Colvin, 718 F.3d 1257, 1265 (10th Cir. 2013). After considering the factors, the ALJ must give "good reasons" for the weight he gives the treating source opinion. Watkins, 350 F.3d at 1300; see 20 C.F.R. § 416.927 ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion."). If the ALJ rejects the opinion completely, he or she must give specific, legitimate reasons for doing so. See Watkins, 350 F.3d at 1301 (decision must be "sufficiently specific" to make clear weight adjudicator gave to treating source medical opinion and reasons for that weight) (quoting SSR 96-

2p, 1996 WL 374188, at *5).

Here, plaintiff's treating physician, Dr. Bloom, submitted a medical source statement in support of her claim for disability. Dr. Bloom noted that plaintiff had several impairments including lymphedema of the legs. Dr. Bloom opined that in a day, plaintiff could stand up to four hours and sit up to six hours. Tr. 680. Dr. Bloom opined that she needed to be able to take unscheduled breaks every 30 to 40 minutes because of pain, paresthesia, numbness and muscle weakness. Tr. 681. Dr. Bloom further opined that plaintiff needed to elevate her legs at heart level about half of each workday because of chronic lymphedema. Id.

The ALJ gave no weight to Dr. Bloom's opinion and his RFC analysis did not include any limitations regarding plaintiff's need to elevate her legs. He did not specifically state why he rejected the limitation that plaintiff elevate her legs for half of each workday because of "chronic lymphedema." Tr. 681. The ALJ generally explained why he gave no weight to Dr. Bloom's opinion as follows:

> First, it is inexplicable that the claimant would not be off task yet would miss more than four days per month. Additionally, there are few treating records and they do not support the extreme limitations (Exhibits 6F, pages 1-45 and 7F, page 15). Finally, the objective evidence from November 2016 that demonstrated no Hoffman's, give way in all groups in the left upper extremity, but deep tendon reflexes that were 1+ and symmetrical at the biceps, triceps, and brachioradialis do not support the limitations found by Dr. Bloom (Exhibit 22F, page 2).

Tr. 26.

As explained below, as it relates to plaintiff's need to elevate her legs, the ALJ did not give "good reasons" for the weight which he gave Dr. Bloom's opinion. Watkins, 350 F.3d at 1300.

As to the stated inconsistency between Dr. Bloom's opinions that plaintiff "would not be off task yet would miss more than four days per month," neither opinion directly relates to plaintiff's need to elevate her legs throughout the workday. Tr. 26. Accordingly, the purported

-8-

inconsistency is insufficient to give no weight to all of Dr. Bloom's opinions.

The ALJ next noted that "there are few treating records and they do not support the extreme limitations." Id. The ALJ cited page 15 of Exhibit 7F, which includes plaintiff's medical records from Dr. Denning, but the cited page only demonstrates that in October of 2014, Dr. Denning documented "leg swelling" and a "need to further evaluate [plaintiff] for possible lymphedema." Tr. 674. Dr. Denning's prior notes are consistent with plaintiff's need to elevate her legs during the day. See Tr. 666-67 (plaintiff reported legs less swollen in morning, prolonged standing and sitting made symptoms worse and "rest, elevation, and not . . . walking" helped to relieve symptoms). Dr. Denning's subsequent notes in 2017 also reflect that plaintiff continued to have lower extremity lymphedema and that this condition would be a chronic management problem. Tr. 1103. While the ALJ also cited Exhibit 6F, which is Dr. Bloom's medical records from 2009 through June of 2015, the paucity of treatment notes for lymphedema in those records is easily explained by the fact that a physician assistant in Dr. Bloom's office referred plaintiff to Dr. Denning for treatment to evaluate her "chronic leg swelling." Tr. 464. Accordingly, the majority of treatment notes related to lymphedema are in Dr. Denning's records.

As to the consistency of Dr. Bloom's opinions with the medical evidence, the ALJ stated that the objective evidence from November of 2016 did not support the stated limitations. The ALJ did not specifically explain, however, how this limited medical evidence was inconsistent with Dr. Bloom's opinion that plaintiff needed to elevate her legs throughout the day. Indeed, the ALJ did not refer to any objective evidence involving the lower extremities. See Tr. 26 (objective evidence "demonstrated no Hoffman's, give way in all groups in the left upper extremity, but deep tendon reflexes that were 1+ and symmetrical at the biceps, triceps, and brachioradialis"); see also Tr. 23-24 (noting significance that examinations demonstrated no obvious edema "in the upper

extremities" but noting edema in lower extremities). The ALJ did not adequately explain how the medical evidence was inconsistent with Dr. Bloom's opinion that plaintiff needs to elevate her legs about half of each workday.

In sum, the ALJ did not provide "good reasons" for assigning no weight to Dr. Bloom's opinion or omitting a limitation in the RFC related to plaintiff's need to elevate her legs. Watkins, 350 F.3d at 1300. Accordingly, the Court remands so that the ALJ can reevaluate the weight afforded to Dr. Bloom's opinion (specifically related to the limitation that plaintiff keep her legs elevated for about half of each workday), provide reasons for the weight given and consider at that point whether changes to plaintiff's residual functional capacity are warranted.

**IT IS THEREFORE ORDERED** that the Judgment of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum And Order.

Dated this 5th day of February, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge